Case number 24-1173, USA v. Malgum Whiteside Jr. Arguments not to receive 15 minutes per side. Mr. Yamafukuza, you may proceed for the appellant. Thank you. Good morning, Your Honors. May it please the Court, Takura Yamafukuza, on behalf of Malgum Whiteside. Good morning. Good morning. With the Court's permission, I'd like to reserve two minutes for rebuttal. All right. Thank you. With the remainder of my time, I'll explain to this Court the two primary reasons why the district court erred when it denied the motion to suppress and again when it applied the Leon good faith exception. First, this affidavit did not establish a nexus between 2901 Harwick Drive and any allegedly criminal activity. Thus, any evidence derived therefrom should have been suppressed. And second, on the facts of this case, the Leon good faith exception was not applicable. There was no valid warrant issued in the first place. Also, the officers performed an unreasonable search. The supposedly criminal nature of the firearms was not immediately apparent and there were no exigent circumstances, pardon me, or any other reason that would justify that unwarranted search. Turning to my first point, first in their pleadings and then repeatedly in both evidentiary hearings, the government went outside the four corners of the affidavit. And they had to because Detective Matthews presented Judge Valvo with a bare bones affidavit. And in United States v. Van Shutter's case from 1998, this court explained that a bare bones affidavit is one that states suspicions or conclusions without providing some underlying factual circumstances regarding veracity, reliability, and the basis of knowledge. And in that same opinion, verification that the defendant actually lives at the searched residence should be included in the affidavit. Here there was no surveillance whatsoever. And neither officers from the Lansing Township Police Department or the University of Michigan Police Department had any personal knowledge. Well, they had talked to the victim, right? And she had said that she had been in the apartment and said what she had seen, including a computer. They were looking for electronic devices that could have the images that he had threatened to release in order to continue the affair. I mean, why is that not enough of a nexus? So if we look at the actual verbiage that Detective Matthews included in the affidavit, she didn't actually say which apartment she'd been in. These two had a relationship that started back in 2018. She did not say specifically that she'd been to 2901 Harwick Drive. And unlike United States v. Rose, a case cited by the government, multiple witnesses in that case said the specific apartment they'd been into, the specific room where they'd seen it. And in that case, again, cited by the government, they said that they saw kiddie porn on a computer. We don't have that here, and we have to go outside. I mean, it was his residence, right? And she had said she had been in his residence. I mean, is there as much detail as there is in some other cases? Probably not. I mean, but that's not the question, right? The question is whether there's enough. And I'm still struggling with why is that not enough? Well, the lack of detail regarding when she was there. Again, this is in Lansing. This residence is in Lansing. And Ann Arbor is where she lived, and that's where Mr. Whiteside was arrested. That's about an hour and a half drive. We don't know how many times he moved or where he lived when she supposedly saw whatever she saw. Well, hadn't officers stopped him before and actually looked at his driver's license, which would have his address on it? Yes, he was actually in custody at the time that detective— Well, yeah, I'm not talking about at the time that they searched. I'm saying in a prior incident when they were investigating the claims of stalking, they had actually looked at his driver's license, hadn't they? I'd like to think they looked at his license, but again, we're going outside the four corners of the document. Could you focus a bit on the problem of the affidavit in support of the search warrant not having been signed by the judge? Is that a problem for the government here that can't be overcome? Where do you stand on that? Yes, Your Honor, it most certainly is. In looking at this affidavit, we see that only the first page is signed, and the second and third pages were the facts which supposedly established probable cause here. I'm arguing they don't. Neither detective nor Judge Valvo signed, so there's no objective way to determine whether she actually reviewed this document. Now, Judge Garwood, the magistrate in that same court who signed search warrants in this court also, she referenced on every single page of the affidavit, the previous page. And in the search warrant, she referenced the affidavit. So we have an example of what right looks like. So there can't be a claim made that it was a local practice to only sign the first page. When she was cross-examined, when I cross-examined her, Judge Valvo said she didn't issue that many search warrants that year, and she could not explain why she didn't sign it. She only believed that she reviewed the substance of this document. Of course, since she signed the first page of the affidavit and swore the officer and subsequently testified that she did, in fact, intend to issue the affidavit, why is that not sufficient? I mean, do you have any cases that would support the proposition that simply signing the first page of the affidavit rendered the search not supported by a proper warrant? So in Whitley v. Warden, the United States Supreme Court said that an otherwise deficient affidavit cannot be rehabilitated by testimony that comes afterward. In Cazares-Olivas, a case cited by the government, in that case, the magistrate called the detective directly and said, you have judicial authorization to go in. That did not happen here. There was no communication whatsoever. And Judge Valvo's judicial assistant testified that she provided the judge with the phone number. So when the judge herself, two years later, cannot recall why she didn't sign, we're now finding ourselves in a situation where police officers can just, again, provide a bare-bones affidavit. Why, just going to Judge Clay's question, I mean, let's say the question is contemporaneously, did the officers have reason to believe that she had made a probable cause determination, right? A neutral and detached magistrate has to make a probable cause determination, right? She swore in the officer at the time. Everybody agrees and listened to him. She also signed the first page of the affidavit. Why is that not enough of an indicia that, yes, she made a probable cause determination at the time? The warrant itself was not signed. There are no markings on either page, and there's nothing on the actual pages which establish the facts. Detective Sergeant Cavanaugh, at the evidentiary hearing, the second one, he said that he's gone back in cases where he saw that the judge did not sign the warrant. So we have somebody on the search team who has over two decades of experience who, for some reason, everybody just relied on the other person's word and did not look at the face of the document that led them inside the house. But, I mean, we're just looking at everything that happened and trying to make an assessment, and I don't think isn't, I mean, haven't we said that we don't need a signature on the actual search warrant? Was that the Beals case? Am I remembering that correctly? Where they presented the warrant to the person and it wasn't signed, but we said that's okay. It's not some magical requirement that every warrant has to be signed. I won't quibble with that point, Your Honor, but also in United States v. Carpenter, 2004, this court also said the connection between a residence and the evidence of the alleged criminal activity must be specific and concrete, not vague or generalized. Here, we don't know. There certainly was no verification that Mr. Whiteside lived there. And when officers searched and found women's clothing in there, they don't know who these firearms belonged to. There's no actual connection between him and the firearms. That's a different issue, isn't it? Understood, yes. Let me ask you this. The officer who presented the search warrant affidavit and was sworn at the time that the request was submitted to the judge, was that officer a member of the team of officers who executed the search warrant and executed the search? He was not, Your Honor. No. He relayed that to Detective Sergeant Kavanaugh, the one who said he, in another case where the warrant bore no signature, he went back and told his counterpart to go and get a signature from the judge. But Detective Sergeant Matthews was not on that search team. I see I'm running short on time, so I'd like to turn to the second issue. And Leon, again, is not applicable on these facts because this court, in United States v. Lofton, concluded that the good faith exception does not permit consideration of information that was known to a police officer but not included in the affidavit. And again, we have to go outside the four corners of this document with regard to Mr. Whiteside's criminal record. It was not contained in there. So when they walk in and say, oh, I knew the instant I saw these firearms that he shouldn't have had them, we are reverse engineering information that was not in the affidavit. But that's a different question. That's a plain view. So we can't go outside the four corners to get probable cause. Why isn't the knowledge of the officers relevant to whether something that they see in plain view can be seized? In other words, it's a warrant exception we're talking about. So it's like the automobile exception, exigent circumstances, plain view. In those circumstances, we're not looking at the four corners of an affidavit or of a warrant, right? We're just looking at what the circumstances were. So the fact that Kavanaugh knew that he was a felon, why wasn't then the fact that the guns were there in plain view? Why isn't that apparent then that that was a problem for Mr. Whiteside? No, no, go ahead. As I alluded to earlier, there was clothing that belonged to women. There was no claim that Mr. Whiteside is a cross-dresser or anything like that. There had been no surveillance in watching anybody coming in or out. So they don't know. They have no idea who those firearms belonged to the last time that he was there. And, again, he was arrested in Ann Arbor. They have no idea if this is actually a – they didn't know who the firearms belonged to. So, again, fanciful suppositions, and particularly when they have this women's clothing in there. There was no mention – Why wouldn't the firearms be within the scope of a stalking warrant? If I'm looking for evidence of stalking, are firearms not something that would be a stalker would use to threaten or harass or intimidate someone? I see I have three seconds left. I'll respond to that question. But in this case, there was no mention whatsoever of threats by Mr. Whiteside. There was no mention of weapons being used. So I think that's too broad and sweeping a conclusion to say in any case involving stalking, you see firearms, those can come in. And that certainly doesn't apply on these facts where there was no such threat mentioned at any point in time. Thank you. You have your rebuttal. Good morning, Your Honors. May it please the Court, John Schall on behalf of the United States Government. I ask the Court to affirm the district court's decision in all respects. I'll begin by focusing on the nexus issue. Fundamentally, the question is whether the state court judge, Judge Devalvo, had a substantial basis for concluding that evidence of the stalking crime will be found in Mr. Whiteside's residence at 2901 Harwick. I think it's helpful to disentangle two of the sub-issues in the nexus. The first is whether there was a sufficient nexus to believe that the evidence of stalking would be in Mr. Whiteside's residence. The second is whether there was sufficient evidence to believe that Mr. Whiteside's residence was the listed address. Now, on the first issue, the affidavit provided substantial information to believe that you would find in Mr. Whiteside's evidence evidence of the crime. We're talking about a multi-year relationship. And we're talking about sexually explicit photographs whose entire purpose were for Mr. Whiteside to maintain and to continue to hold his leverage over the victim. Mr. Whiteside repeatedly threatened to print those photographs, burn them to a DVD, and distribute them widely. Now, based on the affidavit, those photographs were on a phone. And Detective Matthews knew, based on his experience, that phones could be connected to a laptop to save those images or print them or burn them to a DVD. And Mr. Whiteside had indeed done that in a prior instance as the affidavit lays out. Now, that was enough to create a substantial basis for finding nexus in this case. The second sub-issue, which I'll talk about, relies on whether the Harwood Drive residence address was Mr. Whiteside's residence. Now, this court has to look and any court has to look at an affidavit from a broad, common-sense perspective and in totality. So looking at the entirety of the affidavit, the items to be seized, I think it creates a reasonable inference that items to be seized were mail or other residency items for Mr. Whiteside at that address. As the court noted earlier, the officers had performed a substantial investigation up to this point. They had multiple interactions with Mr. Whiteside. They had run his license, his vehicle information, and they knew they provided that information. And it's a reasonable inference to believe that in the course of doing that, they would see what his address is. Why didn't they include the information in the affidavit? I mean, ordinarily you would have something saying this is where we believe that he lives and this is why we believe that he lives there. I mean, I can't speak to exactly why they didn't. I believe that the testimony was that it was simple inadvertence. But I understand the court's point that that would be a better option. But by the same token, we don't hold officers to such a high standard in terms of drafting warrants, especially when you're in a fast-moving investigation like this one. And they're trying to obtain numerous numbers of warrants for other purposes. And I think most importantly, which almost speaks directly to this issue, is the paragraph that a local Lansing Township police officer who was not involved in the investigation was sent out to look at the address, provide a physical description, and the court can see the physical description is extremely detailed, from the bolt on the door and the placement of the handle and the mat. And while that officer was there, I think it's critical the affidavit says he was confirming the address. And I think a reasonable implication, a reasonable inference that can be drawn from that, is that he was confirming the address was the one that was listed or that the officers believed were Mr. Whiteside's residence, based on their investigation and their prior interactions. In any event... There was something in the affidavit about them checking the driver's license, right? That's true, yes. That was in the affidavit. Initial encounter, they checked the driver's license. And I later ran a lien report, which is kind of a Michigan judicial... But that's not in the affidavit, is it? I believe the lien is in the affidavit, Your Honor, that they did that. If I can find that for the Court. So that would be paragraph K, where it said, I ran this plate in the Law Enforcement Information Network, which is connected to the Michigan Secretary of State. That's on page ID 59. And in any event, the good faith exception would surely apply in this case. And the standard for applying the good faith exception for nexus, as this Court has recognized, is simply a modicum of evidence, even if slight, connecting the evidence to the residence. And this Court has recognized, in both Vanstraders and Rose, that a magistrate judge or a judge reviewing can rely on a reasonable inference, even without an explicit statement that a certain address was someone's residence. I'll next turn to the signature requirement, unless the Court has any questions on the nexus. And I should say the lack of a signature requirement. From what I gather from the briefing and from the discussion earlier, it seems to me that what Mr. Whiteside is arguing on appeal is fundamentally a factual issue. Factual finding that the warrant, in fact, was issued and authorized by the judge, Judge Valvo. That, as the Court probably understands and recognizes, is subject to a very deferential review. Is there any relevance to her testimony that she intended to? I mean, this has to be apparent to the officers at the time. Is that right? Well, so I believe, to disentangle two of the issues, there's one issue on whether the warrant itself is authorized. And I think the perspective of the officers is certainly relevant to that question. But the perspective of the officers, or the good faith exception, is probably most relevant to what the officers understood and knew. Here, as the Court has noted, the judge testified, was subject to cross-examination, and the Court found it credible that she reviewed the entire affidavit, made a determination of probable cause, and authorized the warrant. Her judicial assistant passed along that information that those were signed. But to your point, Judge Nalbandian, the fact that the officers were told that the documents were signed helps establish, I think, the good faith of the officers. And that's why, in many of these cases... But is it only good faith? I'm confused what your argument is. I'm saying, the officer at the time, at the time, has to know that a neutral and detached magistrate has made a probable cause determination, right? He has to have reason to believe that that's happened. And normally, if I have a signed affidavit and a signed warrant from the judge, I can conclude that, yes, the judge has done this duty. But it's all based on what's going on at the time. Not, I call the judge to the stand two years later and say, hey, did you make a probable cause determination? Of course I did. I mean, if that were true, then you could fix any warrant any time after the fact. Well, I believe you'd have to, I mean, you'd have to have good faith for the judge to come up and testify that they, in fact, authorized the warrant. And I would be surprised if a judge would be wrong. Right, but I'm just separating good faith, like a good faith Leon-type argument from a, is this a validly issued warrant that a reasonable officer was entitled to rely on, or whatever, however you want to phrase it, right? That's not a good, I'm saying, is it a valid, actually valid warrant? Not is there good faith, but is there, and I take it, I mean, because I don't read the cases as saying every warrant has to be signed by a judge in order to be valid. Is that right? I haven't found a case that has said that that's an absolute necessity. And in the cases that have addressed unsigned warrants, they've either been upheld on the basis that there was a proper factual finding that it was indeed an authorized, and the magistrate judge made a probable cause determination, or it was held up on good faith. There's a case, and I can't remember the name, it's from the First Circuit, I think, maybe it's Lyon, okay? There's a case where they basically look just kind of at a totality of the circumstances, but contemporaneous evidence of whether there was a probable cause, whether an officer, I guess, could conclude there was a probable cause determination made by a judge or a judicial officer. And here, what would you point to? You would point to the signature on at least the one page of the affidavit, the fact that she swore him in. What else? The judicial assistant sending the... The email that they were in fact... That they were signed. And I would point to the stamp on the warrant itself. Now, I think the testimony shows that for Judge Valvo, the stamp wasn't even applied by her, and it's more for clarity purposes. But there are courts, and I think the district court cited a number of them, where magistrate judges use stamps. And at least from the perspective of the executing officer in this case, Detective Cavanaugh, who testified that he believed that the stamp, in addition to the initials on the affidavit, was sufficient for authorization. I think more broadly, the question, like I said, is a factual... Is it a stamp of her name? It's a stamp of her name with what's called her P number for bar information purposes. And I think the totality of those circumstances, in addition to what the magistrate judge actually testified, as it lines up to what the Fourth Amendment's actual text requires, is just that a warrant be issued. No warrant shall be issued but upon probable cause with an oath or affirmation that sets out the particularities of those things. So that's why my argument, in terms of the probable cause, is more focused on what the judge did and intended to do, but certainly how the officers perceived it and what the officers thought is relevant to that question, and it's also relevant to the good faith question. I would also just point out to the Court that on the third issue, the seizure of the firearms, that the district court properly found that that seizure could be upheld on two independent bases. The first is the plain view exception to the warrant. The second is that those firearms were seized within the scope of the warrant. Can you talk about the scope of the warrant? Because I'm confused. There was no indication that he had threatened her with a gun or anything like that, or even maybe threatened her with physical harm. I'm not sure. So why is the gun relevant? Is it relevant in any stalking case? Is that your position? I wouldn't want to speak so broadly as to every stalking case, but under the factual circumstances that are presented here. So a couple of the facts that go to the potential relationship is that they had also found, and they put in the affidavit, two police batons in his vehicle. And the victim had been concerned about things escalating, and he kept making all these threats that it would get worse and worse and worse. I don't think it's in the affidavit, but the victim was also aware at some point during the affair that he had an extremely severe criminal history as it relates to violent conduct. And the Michigan statute simply defines stalking as a pattern of harassment that would cause someone to be intimidated or terrorized or fearful. In fact, they were terrorized or fearful. And certainly it was reasonable for the executing officers to believe that a gun would be relevant to that. And again, there's a separate alternative basis that I think fits very well here, which is a plain view exception. The officers, for the reasons I've mentioned, were properly in Mr. Whiteside's residence, pursuant to the warrant. They were searching for something very small, any sort of memory stick or other device that could hold the sexually assaulted photograph. Why is it apparent that the guns are contraband, basically? So as a district court found, the officers testified that they knew that Mr. Whiteside was a felon. And this court's recognized in other cases that if you're in someone's home, in someone's bedroom, and you see a gun, there's probable cause to believe that that gun is contraband because it's being possessed by someone who's a felon. And if you know, if the officer knows that that person is a felon? I think that at least your judge... I mean, that was the subjective knowledge, even though it's not in the four corners of the affidavit or anything like that, the subjective knowledge of the officer is relevant for a plain view? Certainly not. Is that right? The plain view is an exception to the warrant requirement, and here we can go outside of the four corners, and there was ample testimony on the fact that Mr. Whiteside was a felon, and they knew that before going... Does it matter that... I think counsel made the point that there was some women's clothing in the apartment. I know that the affidavit, and I think there was testimony at the hearing also from the officer, that it looked like he was the sole occupant of the house. Does any of that matter? I think that matters. It seems like it should, so I just want to give you a chance to... It certainly matters. I think it goes more to whether there was probable cause. If you're in a house and there are... Well, doesn't it also go to whether or not it was immediately apparent that this was contraband? The Supreme Court, I think in Texas v. Brown, has said that the immediate apparent is somewhat of a misnomer, that all that's really required is probable cause to believe that the firearm is evidence of a crime, and that's all that's really required. So certainly in a case where you have multiple people in a residence, it might be more difficult to determine probable cause. Here the record shows that it appeared that he was a sole occupant. Whether there was sometimes a girlfriend around or not certainly makes it... opens up the possibility that it was someone else's, but I think there was more than sufficient probable cause based on the fact that it appeared to be his bedroom. It was hidden between the mattress and the frame, and I think in many cases this court has, under similar circumstances, recognized that the firearm is immediately apparent or there's probable cause to believe that the firearm is evidence of a crime. All right. I think we're out of time, and we'll hear rebuttal. Thank you. The government wants Judge Valvo and the detectives to receive a passing grade for an incomplete assignment. Judge Valvo did not communicate directly to Detective Sergeant Matthews or Kavanaugh that she had authorized the warrant. Again, Casares Olivas, a case that the government cited, that did happen, and Detective Sergeant Kavanaugh is the one who himself had gone back on another case when he saw there wasn't a warrant. So for a detective not to read, not to look at the very document they're relying on to go in, and then allow them to reverse engineer a remedy two years later is something that I'm asking this court not to do. Again, paragraph G. The government just said Mr. Whiteside kept these images for the purpose of maintaining control over. Absolutely not. Paragraph G. Detective Sergeant Matthews wrote in there that the photos and videos were taken consensually. Looking at paragraph K, while somebody did run lien and secretary of state searches, that was for his date of birth. For his date of birth. Didn't say anything about the license. And we're assuming, again, going outside the four corners of the document, that when they reviewed the license that it was a current one. People move frequently, and they don't always the following day or day before update their address. It's a good practice, but we don't know that that actually happened here. Can I circle you back just to one thing that you just said? Now, with respect to her, whether or not there was probable cause or she actually issued this warrant, isn't it clear that she swore out the officer? She swore him, right? She did. What's the circumstance under which a judge swears out an officer but doesn't issue a warrant? Well, that assumes that every single time an officer gets sworn that a warrant is issued. And I don't have any statistics for the court to say that every single time somebody requests a warrant, then it's issued. And that would actually be troubling. Well, it's not requesting. It's when it's been sworn. When you swear the officer. Understood. But that is simply the judge listening. Do you have enough here to rise to the level of probable cause? And to assume that just because somebody gave testimony, then automatically a warrant is going to be issued is, I think, a bridge too far to cross. And, again, based on the circumstances of this case, where they simply did not read the warrant, and all the things that did not happen in this case are what's problematic. They didn't read it. There was no communication, phone, email, text message, smoke signal, nothing whatsoever. All the things that did not happen. And we have to go outside the four corners of the document. And I know I'm out of time, but a point that the government made regarding the Lansing Township Police Department going to look at the building. So what? That means it's still standing. It's not a Taco Bell now. Again, there was no surveillance, and they don't know anything about the comings or goings or who actually lives there. Thank you. Thank you, and the case is submitted.